

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIM GARRISON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-3532** |
| **BURL CAIN** | **SECTION "J" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE** as time-barred.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Kim Garrison, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Garrison is challenging his Jefferson Parish conviction for armed robbery. The state record reflects that, on January 17, 1997, the Jefferson Parish district attorney filed a bill of information charging a man named Damien G. Francis with the armed robbery of Oliver Montgomery.[3] After a trial held on June 25 and 26, 1997, the jury was unable to reach a verdict and the state trial court declared a mistrial.[4]

Thereafter, on August 25, 1997, the district attorney called for issuance of a new bill of information recharging Francis and adding the petitioner, Kim Garrison, on the armed robbery charge.[5] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows in relevant part:

> On December 21, 1996, at approximately 11:00 p.m., Oliver Montgomery drove to the Rose Lounge in Marrero in a green Pontiac Grand Am for a drink after work. He parked the vehicle in an area that was fairly well lighted. As he exited his vehicle, two black males approached him. One was between 5'9" to

---

[2]Rec. Doc. No. 2, Petition.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 1/17/97.

[4]St. Rec. Vol. 1 of 6, Trial Minutes (Francis), 6/25/97; Trial Minutes (Francis), 6/26/97; Jury Verdict (Francis), 6/26/97; St. Rec. Vol. 2 of 6, Trial Transcript, 6/26/97.

[5]St. Rec. Vol. 1of 6, Bill of Information, 1/17/97 (amended 8/25/97); Bill of Information, 8/25/97.

5'10" tall, wearing a facial mask and carrying a black handgun, and the other was approximately 5'7" tall, wearing a bandana. They ordered Montgomery twice to give them his money, and he twice pled for his life. The victim then turned his pockets inside out, and money ($40), keys, and an A-Plus pager fell from his pockets to the ground. The assailants gathered the items and also took his jacket. They got into his car, with the gunman seated on the passenger side and the other robber on the driver's side.

The victim testified that the car was in a lighted area; the car's dome light was activated as the robbers entered the vehicle, and the victim was standing within four feet of the vehicle at the time. Before they drove from the scene, the gunman removed the mask from his face, and the victim was able to see his face. The victim noticed the gunman had an open-faced crown on his tooth. The victim looked at the license on his car as it was being driven from the scene. The victim gave statements to at least two police officers, which included a recitation of the events, a description of the assailants and the victim's vehicle.

On the night in question, at approximately 11:21 p.m., Jefferson Parish Deputy Olain Vinning saw a green Pontiac Grand Am run a stop sign at the intersection of Bywater and Lincoln Streets. He had just received a dispatch report of the armed robbery and carjacking of Mr. Montgomery, and the license number given in the report matched that on the vehicle that ran the stop sign. He gave chase and tried to pull the vehicle over. When it stopped, the occupants jumped out and fled on foot. In the car, Officer Vinning observed money, a pager, a jacket and a BB gun that resembled a .9 mm handgun. Detective Willie Jones checked the area for evidence and found an Express Pager within 30 yards of the vehicle.

Detective Raymond Gorman had also heard the radio dispatch of the robbery and carjacking, and he proceeded to the area where Officer Vinning had engaged in the car chase. Detective Gorman stopped his car when he saw someone in a backyard near a shed. A chase ensued, and the officers lost sight of one of the suspects, but the other was found between two houses, lying in grass. The victim identified this suspect, whose name was Damien Francis, as the person who robbed him.

Damien Francis gave two statements from which the identity of a second suspect developed. Detective Gorman, through researching the numbers on the pager, discovered that it was registered to Craig Garrison, who lived in Marrero with his brother, Kim Garrison. It was known in the neighborhood and at Higgins High School, attended by both Damien Francis and Kim Garrison, that they were friends. In the early morning following Francis' arrest, Kim Garrison's mother called Francis' cousin, Sheila Provost, to tell her that Damien Francis had been arrested. Ms. Provost then called Veronica Francis to tell her of Damien's arrest.

Ms. Francis thereafter discussed the robbery, and who might be involved, with the principal of her son's high school. This information was ultimately

> forwarded to Lieutenant Judith Erchul, of the Armed Robbery Task Force of the Jefferson Parish Sheriff's Office, who was trying to develop leads on a second suspect in this case.
>
> On December 30, 1996, Mr. Montgomery was not able to identify anyone in a photographic line-up nor was he able to identify anyone in a second photographic line-up conducted on January 23, 1997. However, after pondering it overnight, he contacted Officer Erchul the next morning and asked to see the line-up again. At this time, Mr. Montgomery selected the photo of Kim Garrison.
>
> Erika Baptiste, Damien Francis' cousin and alleged girlfriend of Kim Garrison, testified that she received a telephone call from Kim Garrison in January 1997 in which he was trying to find out from her if Damien Francis had been heard from and if he was "talking" in jail. During this conversation, Kim Garrison told her that he was not going to jail for anyone and commented, "you know, rats get killed in jail."
>
> On June 26, 1997, while attending Damien Francis' trial, the victim saw Kim Garrison in the hallway. Mr. Montgomery was sure that this was the second assailant and he notified the District Attorney. The information was relayed to Officer Gorman, who delivered it to Lt. Erchul.

(footnote omitted) State Record Volume 2 of 6, Fifth Circuit Opinion, 00-KA-1611, May 30, 2001; State v. Garrison, 796 So.2d 941 (La. App. 5th Cir. 2001) (Table).

Garrison was tried separately from his co-defendant[6] on August 26 and 27, 1998 and found guilty as charged of armed robbery.[7] At a hearing held on September 17, 1998, the state trial court denied Garrison's motions for new trial and for judgment of

---

[6]Francis was tried a second time before a jury on June 16 and 17, 1998 and found guilty of first degree robbery. St. Rec. Vol. 1 of 6, Trial Minutes (Francis) (2 pages), 6/16/98; Trial Minutes (Francis) (2 pages), 6/17/98; Jury Verdict (Francis), 6/17/98. On September 8, 1998, he was sentenced to serve five years imprisonment. St. Rec. Vol. 1 of 6, Sentencing Minutes (Francis), 9/8/98.

[7]St. Rec. Vol. 1 of 6, Trial Minutes (Garrison) (2 pages), 8/26/98; Trial Minutes (Garrison) (2 pages), 8/27/98; Jury Verdict (Garrison), 8/27/98; St. Rec. Vol. 3 of 6, Trial Transcript (Garrison), 8/26/98; Trial Transcript (Garrison), 8/27/98; St. Rec. Vol. 4 of 6, Trial Transcript (Garrison) (continued), 8/27/98.

4

acquittal, and the State filed a multiple bill against Garrison.[8] At the same hearing, the state trial court sentenced Garrison to 20 years imprisonment without benefit of parole, probation or suspension of sentence.[9]

After several hearings on the multiple bill, the state trial court sentenced Garrison on December 10, 1998 as a multiple offender to 49½ years without benefit of parole, probation or suspension of sentence.[10] The court also overruled counsel's objection to the sentence as excessive.[11]

On direct appeal, Garrison's counsel raised four assignments of error: (1) The evidence was insufficient to establish that he was armed with a dangerous weapon or that he was the perpetrator of the offense. (2) The trial court erred in denying the motions for judgment of acquittal and for new trial. (3) The evidence was insufficient to support the multiple offender adjudication. (4) The sentence imposed on the multiple bill was

---

[8] St. Rec. Vol. 1 of 6, Motion Hearing Minutes (Garrison), 9/17/98; Motion for New Trial, 9/8/98; Motion for Judgment of Acquittal, 9/8/98; Multiple Bill (Garrison), 9/17/98; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/17/98.

[9] St. Rec. Vol. 1 of 6, Sentencing Minutes (Garrison), 9/17/98; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/17/98.

[10] St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 10/29/98; Multiple Bill Hearing Minutes, 11/12/98; Multiple Bill Hearing Minutes, 12/10/98; Sentencing Minutes, 12/10/98; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 11/12/98; Sentencing Transcript, 12/10/98.

[11] St. Rec. Vol. 1 of 6, Sentencing Minutes, 12/10/98; St. Rec. Vol. 4 of 6, Sentencing Transcript, 12/10/98.

excessive.[12] On May 30, 2001, the Louisiana Fifth Circuit affirmed Garrison's conviction finding no merit to the claims raised.[13]

Garrison's counsel filed a writ application in the Louisiana Supreme Court on June 28, 2001, seeking review of the same grounds for relief.[14] The court denied the application without reasons on May 10, 2002.[15]

Garrison's conviction became final 90 days later, on August 8, 2002, when he did not file a writ application in the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

Nine months later, on May 14, 2003, Garrison filed a pro se application for post-conviction relief in the state trial court alleging ineffective assistance of counsel and insufficiency of the evidence.[16] On May 21, 2003, the state trial court denied the

---

[12]St. Rec. Vol. 4 of 6, Appeal Brief, 01-KA-1611, 1/19/01; St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 00-KA-1611, 5/30/01.

[13]St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 00-KA-1611, 5/30/01; State v. Garrison, 796 So.2d 941 (La. App. 5th Cir. 2001) (Table).

[14]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 01-K-1914, 6/28/01; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2001-K-1914, 6/28/01.

[15]State v. Garrison, 815 So.2d 834 (La. 2002); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2001-K-1914, 5/10/02.

[16]St. Rec. Vol. 2 of 6, Uniform Application for Post Conviction Relief, 5/14/03.

application as meritless on the ineffective assistance of counsel claim, as repetitive on the sufficiency of the evidence claim and otherwise as procedurally improper pursuant to La. Code Crim. P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[17]

Garrison filed an untimely[18] writ application in the Louisiana Fifth Circuit on June 30, 2003, seeking review of the trial court's ruling.[19] The court denied the application on July 22, 2003, for failure to disclose an error in the trial court's ruling.[20]

On September 2, 2003, Garrison filed an untimely[21] writ application in the Louisiana Supreme Court raising the same grounds.[22] The court denied the application

---

[17]St. Rec. Vol. 2 of 6, Trial Court Order, 5/21/03. La. Code Crim. P. art. 930.3 lists the grounds for which post-conviction relief may be granted by Louisiana courts. In State ex rel. Melinie, the Louisiana Supreme Court ruled that claims of excessive sentence or errors in sentencing that should have been raised on direct appeal are not proper for post-conviction relief. State ex rel. Melinie, 665 So.2d at 1172 (citing La. Code Crim. P. art. 930.3).

[18]The application was filed more than 30 days after the trial court's ruling, the period set forth in La. App. Rule 4-3.

[19]The record does not contain a copy of this writ application. The date of filing appears on the face of the order and has been confirmed by my staff with the clerk of the Louisiana Fifth Circuit. St. Rec. Vol. 2 of 6, 5th Cir. Order, 03-KH-769, 7/22/03. The State has also submitted a letter from the clerk of the Louisiana Fifth Circuit establishing the filing date as June 30, 2003. Rec. Doc. No. 6, Exh. A.

[20]St. Rec. Vol. 2 of 6, 5th Cir. Order, 03-KH-769, 7/22/03.

[21]The application was filed more that 30 days after the appellate court's ruling, the period set forth in La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

[22]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 03-KH-2435, 9/2/03; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2003-KH-2435, 9/2/03.

on September 3, 2004, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[23] Garrison's application for rehearing was denied without reasons by the Louisiana Supreme Court on December 10, 2004.[24]

## II. FEDERAL HABEAS PETITION

On February 4, 2005, Garrison filed a petition for federal habeas corpus relief seeking relief on grounds of (1) insufficient evidence to support the conviction for armed robbery and (2) ineffective assistance of counsel in the multiple bill proceedings.[25]

In its response, the State concedes that Garrison has exhausted his state court remedies but argues that Garrison's federal petition is _not_ timely filed.[26] The State also asserts that Garrison's second claim is procedurally barred from federal habeas corpus review.

## III. STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[23]State ex rel. Garrison v. State, 882 So.2d 600 (La. 2004); St. Rec. Vol. 6 of 6, 2003-KH-2435, 9/3/04.

[24]St. Rec. Vol. 6 of 6, Application for Rehearing, 03-KH-2435, 10/20/04; La. S. Ct. Order, 2003-KH-2435, 12/10/04; State ex rel. Garrison v. State, 888 So.2d 821 (La. 2004).

[25]Rec. Doc. No. 2, Petition, p. 4, Memorandum in Support, p. 1, 4, 12.

[26]Rec. Doc. No. 6.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Garrison's petition, which, for reasons discussed below, is deemed filed in this court on December 19, 2004.[28]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In the instant case, the State concedes exhaustion of state court remedies, but argues that one of Garrison's claims is procedurally barred and that his petition is not

---

[27] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Garrison's petition on February 4, 2005, the date on which the filing fee was paid. However, Garrison signed the petition on December 19, 2004, which is the earliest date he could have submitted it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

timely filed. After review of the pleadings and the state court record, I find that Garrison has exhausted his state court remedies, but that the petition is <u>not</u> timely filed under the AEDPA and must be dismissed with prejudice for that reason without need to address the procedural bar defense.

IV.   <u>STATUTE OF LIMITATIONS</u>

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[29]   Garrison's conviction became final on August 8, 2002, which was 90 days after the Louisiana Supreme Court denied his appellate writ application and he did not seek review in the United States Supreme Court.

---

[29] Specifically, Section 2244(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

10

Thus, literal application of the statute would bar Garrison's Section 2254 petition as of August 8, 2003. Under the federal mailbox rule, his federal petition is deemed filed on December 19, 2004, more than 16 months after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances prevented timely filing. Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 125 S. Ct. at 1814-15; Cousin, 310 F.3d at 848.

Garrison has not asserted any reason that might constitute exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See United States v. Wynn, 292 F.3d 226

11

(5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly

described this provision as a tolling statute. Duncan v. Walker, 533 U.S. 167, 175-178 (2001).

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").

However, a motion for transcripts or copies is not considered "other collateral review" which would entitle a habeas petitioner to statutory tolling under Section 2244(d)(2). Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw). A petitioner is not entitled to the exceptional remedy of tolling while he waits to gather every scrap of paper that might support his post-conviction claims. See Flanagan, 154 F.3d at 199; Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000) (Berrigan, J.), aff'd, 239 F.3d 365 (5th Cir. 2000) (delay in

receiving transcripts does not warrant tolling unless petitioner can prove that he had to have transcripts to proceed); Gerrets v. Futrell, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receiving transcript not specifically required to file application does not warrant equitable tolling). Garrison is not entitled to tolling for his attempt to obtain transcripts and documents during the time period addressed herein.[30]

Finally, the phrase "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, for the reasons discussed above, the one-year limitations period began to run in Garrison's case on August 9, 2002, the day after his conviction became final. The limitations period ran uninterrupted for 278 days, and was tolled on May 14, 2003, when Garrison filed his application for post-conviction relief in the state trial court. The application remained pending for tolling purposes until June 20, 2003, which was 30

---

[30] E.g., St. Rec. Vol. 2 of 6, Motion for Production of Documents, 12/2/02; Trial Court Order, 12/6/02.

days after the trial court ruled on May 21, 2003, and no further appellate review was available. Williams, 217 F.3d at 310; La. App. Rule 4-3.

On June 21, 2003, the one-year AEDPA limitations period ran for an additional nine days, at which time Garrison filed a writ application in the Louisiana Fifth Circuit on June 30, 2003. Under United States Fifth Circuit precedent, this untimely writ application remained pending for tolling purposes for 30 days after it was denied on July 22, 2003, or until August 21, 2003, when no further appellate review was available. Id.; Melancon v. Kaylo, 259 F.3d 401, 405 (5th Cir. 2001) (because La. App. R. 4-3 has exceptions, an untimely appellate writ application tolls the one-year statute of limitations period during the time it was actually pending); but see Pace, 125 S. Ct. at 1811 (the existence of exceptions to a state timeliness requirement does not prevent a late application from being considered improperly filed).

The one-year AEDPA period began to run again on August 22, 2003 and continued to run for the 78 days remaining in the AEDPA limitations period, until it expired on November 7, 2003. Garrison had no other properly filed state post-conviction or other collateral review proceedings pending during that period.

I am aware that Garrison filed a writ application in the Louisiana Supreme Court during that time period on September 2, 2003. However, as noted above, that filing was untimely under La. S. Ct. R. X§5(a) because it was filed more than 30 days after the


Louisiana Fifth Circuit ruled on Garrison's writ application. Under federal habeas corpus law, this untimely filing <u>cannot</u> be considered in the tolling calculation under the AEDPA for the following reasons.

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is <u>not</u> properly filed because it is untimely, and post-conviction review is <u>not</u> pending for purposes of AEDPA's statute of limitations and tolling doctrines. <u>Williams</u>, 217 F.3d at 309-11; <u>see</u> <u>Pace</u>, 125 S. Ct. at 1812. Under this doctrine, Garrison cannot benefit from any tolling as a result of his improperly filed and untimely writ application in the Louisiana Supreme Court.[31]

Garrison also is <u>not</u> entitled to statutory tolling for his improper and untimely application for rehearing filed on October 20, 2004 for several reasons. The petition for rehearing was procedurally improper under La. S. Ct. Rule IX§6, which provides in

---

[31] Under federal habeas corpus law, a <u>state mailbox rule would not be considered or applied</u> to change this conclusion. <u>Coleman</u>, 184 F.3d at 402; <u>Lookingbill v. Cockrell</u>, 293 F.3d 256, 262 (5th Cir. 2002) (state mailbox rule not applied because federal law determines the time limits under the AEDPA); <u>Porter v. Dretke</u>, 2005 WL 1185808 at *5 (S.D. Tx. May 19, 2005); <u>Richardson v. Dretke</u>, 85 Fed. Appx. 394, 395 (5th Cir. 2004); <u>Kestler v. Cockrell</u>, 73 Fed. Appx. 690, 691 (5th Cir. 2003); <u>Torns v. Mississippi</u>, 54 Fed. Appx. 592, 2002 WL 31730353 (5th Cir. Nov. 22, 2002); <u>Miller v. Cockrell</u>, 45 Fed. Appx. 326, 2002 WL 1899595, No. 00-20930 at *4 (5th Cir. Jul. 11, 2002) (Table) (unpubl.). Nevertheless, even if a reviewing court were to consider applying such a rule, Garrison's federal petition would still be untimely. Under an alternative calculation, the court could toll from June 30, 2003 when he filed in the Louisiana Fifth Circuit through September 3, 2004, the day the Louisiana Supreme Court writ was denied. The one-year period would begin to run again on September 4, 2004 for the remaining 78 days, until November 20, 2004, when it would expire. The improper and untimely application for rehearing would offer no tolling benefit to Garrison for the reasons stated in this report.

relevant part that "[a]n application for rehearing will not be considered when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ." Under this rule, Garrison had no right to seek rehearing in the Louisiana Supreme Court and therefore gains no tolling for the improper filing. Cf. Gaudet v. Cain, 31 Fed. Appx. 835, 2002 WL 243278 at **1 (5th Cir. Jan. 18, 2002) (application for rehearing in state circuit court did not toll the AEDPA limitations period); see also Scott v. Cain, 2002 WL 1484385 at *2 n.17 (E.D. La. Jul. 10, 2002) (Africk, J.) (Louisiana Supreme Court ruling is final when ordered in light of the Rule IX§6 disregard for rehearing applications).

Even if Garrison could have sought rehearing, his application for rehearing filed on October 20, 2004, was untimely. Louisiana law requires that a motion for rehearing, where one is allowed, be filed within 14 days of issuance of the underlying order. La. S. Ct. Rule IX§1; La. Code Crim. P. art. 922. Garrison's application for rehearing was filed 47 days after the Louisiana Supreme Court denied his writ application on September 3, 2004. La. S. Ct. Rule IX§1 offers no extensions to its time limits and his application was filed well beyond the proscribed period. See Williams, 217 F.3d at 309-11 (La. S. Ct. Rule X has no exceptions to its time limits); see also Pace, 125 S. Ct. at 1812. Thus, Garrison is not entitled to tolling for his application for rehearing.

Garrison's federal petition is deemed filed at the earliest on December 19, 2004, which is 13 months after the AEDPA statute of limitations period expired, considering the tolling periods discussed above. Thus, Garrison's petition must be dismissed with prejudice as time-barred under the statute of limitations provided in 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Kim Garrison for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

        New Orleans, Louisiana, this __27th__ day of June, 2005.

                              JOSEPH C. WILKINSON, JR.
                              UNITED STATES MAGISTRATE JUDGE